**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

APPALACHIAN VOICES, *et al.*,

       *Petitioners*,

   *v.*

FEDERAL ENERGY
REGULATORY COMMISSION,

       *Respondent,*

MOUNTAIN VALLEY PIPELINE,
LLC, *et al.*

   *Respondent-Intervenors.*

Nos. 22-1330 & 23-1117
(consolidated)

**MOTION OF MOUNTAIN VALLEY PIPELINE, LLC, GAS AND OIL
ASSOCIATION OF WV, INC., AND EQUITRANS, L.P.
TO DISMISS FOR LACK OF JURISDICTION OR, IN THE
<u>ALTERNATIVE, FOR SUMMARY DENIAL</u>**

   Pursuant to Federal Rule of Appellate Procedure 27, D.C. Circuit Rule 27, and

this Court's Order dated May 26, 2023 inviting motions to govern future

proceedings, Respondent-Intervenors Mountain Valley Pipeline, LLC ("Mountain

Valley"), the Gas and Oil Association of WV, Inc. ("GO-WV"), and Equitrans, L.P.

("Equitrans") hereby move to dismiss these consolidated petitions for lack of

jurisdiction or, in the alternative, for summary denial of the petitions. Petitioners oppose this motion.[1]

## BACKGROUND

These consolidated petitions seek review of orders of the Federal Energy Regulatory Commission ("FERC" or "Commission") extending the time to construct and place into operation the Mountain Valley Pipeline Project ("Project"), a planned (and largely completed) interstate natural gas pipeline project extending from West Virginia to Virginia. The Commission originally approved the Project under the Natural Gas Act in October 2017, and this Court denied numerous petitions for review of the Commission's orders approving the Project. *See Mountain Valley Pipeline, LLC*, 161 FERC ¶ 61,043 (2017), *on reh'g*, 163 FERC ¶ 61,197 (2018), *pets. for review denied*, *Appalachian Voices v. FERC*, No. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 19, 2019) (per curiam).

---

[1] Petitioners have separately indicated that they plan to move for voluntary dismissal of these petitions. Mountain Valley, GO-WV, and Equitrans nonetheless file this motion because Congress has vested this Court with "original and exclusive jurisdiction" to address issues related to the constitutionality and application of the legislation that is the basis for this motion to dismiss, i.e., Section 324 of the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10 (2023); *see also infra* note 2. Mountain Valley, GO-WV, and Equitrans anticipate that Petitioners will improperly seek to litigate those challenges to Section 324 in the U.S. Court of Appeals for the Fourth Circuit. By filing this motion, Mountain Valley, GO-WV, and Equitrans provide Petitioners a ready opportunity to raise such issues in the only statutorily proper forum—i.e., this Court.

The Commission's initial order approving the Project required Mountain Valley to construct the Project and place it into service by October 13, 2020. *See Sierra Club v. FERC*, 68 F.4th 630, 637 (D.C. Cir. 2023) (describing procedural history). Mountain Valley began construction in February 2018, but progress was interrupted following extensive litigation in the Fourth Circuit brought by project opponents (largely coextensive with Petitioners in these consolidated cases) challenging various other federal permits for the Project. *See id.* at 637-38. The Commission subsequently granted Mountain Valley an extension of time to complete the Project until October 13, 2022. *See id.* at 639 (citing *Mountain Valley Pipeline, LLC*, 173 FERC ¶ 61,026 (2020) ("First Extension Order")). Various parties, including most of the Petitioners in these consolidated cases, sought review in this Court of the Commission's order extending Mountain Valley's time to construct the Project and place it into service. *See id.* at 641.

While litigation regarding the validity of the First Extension Order was pending in this Court, and shortly before the expiration of Mountain Valley's October 13, 2022 deadline, the Commission issued an order extending Mountain Valley's time to construct the Project and place it into service until October 13, 2026. *See Mountain Valley Pipeline, LLC*, 180 FERC ¶ 61,117 (2022) ("Second Extension Order"). Petitioners sought rehearing of that Second Extension Order, and the Commission denied their rehearing requests. *See Mountain Valley Pipeline, LLC*,

3

182 FERC ¶ 61,046 (2023) ("Second Extension Rehearing Order").  Meanwhile, the

now-superseded First Extension Order expired by its own terms when the October

13, 2022 deadline passed.  *See Sierra Club*, 68 F.4th at 641.

The above-captioned petitions seek this Court's review of the Second

Extension Order and the Second Extension Rehearing Order.  This Court held these

petitions in abeyance pending resolution of the litigation on the validity of the First

Extension Order.  *See* Order, Feb. 2, 2023, Doc. 1984327; Order, Apr. 20, 2023,

Doc. 1995716.  On May 26, 2023, this Court dismissed as moot the pending

challenge to the First Extension Order, given that the First Extension Order had

expired and been superseded by the Second Extension Order.  *Sierra Club*, 68 F.4th

at 643-44, 652.  This Court accordingly ordered the parties to file motions to govern

in these consolidated cases concerning the Second Extension Order.  *See* Order, May

26, 2023, Doc. 2000974.

Shortly thereafter, Congress enacted new legislation that removed barriers to

the prompt completion of the Project—legislation that resolves these petitions and

other lawsuits related to federal-law permits or authorizations for the Project.  On

June 3, 2023, President Biden signed into law the Fiscal Responsibility Act ("Act").

*See* Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10 (2023).

Section 324 of the Act (attached as Exhibit A) "finds and declares that the timely

completion of construction and operation of the Mountain Valley Pipeline is

4

required in the national interest." Act § 324(b). To that end, the Act provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any action taken" pursuant to federal law by an administrative agency, including the Commission, "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline . . . whether issued prior to, on, or subsequent to the date of enactment of this section, and including any lawsuit pending in a court as of the date of enactment of this section." *Id.* § 324(e)(1).[2]

Independent of its provisions addressing jurisdiction, the Act substantively "ratifies and approves" all administrative actions, including "extensions," "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline," "[n]otwithstanding any other provision of law." Act § 324(c)(1). The Act "directs" the relevant agencies, including the Commission, "to continue to maintain such authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline," again "[n]otwithstanding any other provision of law." *Id.* § 324(c)(2). Finally, the Act specifies that its provisions "supersede[] any other provision of law (including any other section of this Act or other statute, any

---

[2] The legislation also gives this Court "original and exclusive jurisdiction" to entertain any claim alleging that Section 324 is "invalid[]" or that "an action is beyond the scope of authority conferred by [Section 324]." Act § 324(e)(2).

regulation, any judicial decision, or any agency guidance) that is inconsistent with the issuance of any authorization, permit, verification, biological opinion, incidental take statement, or other approval for the Mountain Valley Pipeline." *Id.* § 324(f).

## ARGUMENT

The Mountain Valley Pipeline Project has led to a veritable flood of litigation, in this and other courts, for nearly half a decade. That litigation has delayed for years the completion of construction and entry into service of this important pipeline, postponing the realization of the many economic and environmental benefits that will result from finishing construction, bringing already-disturbed areas along the right-of-way to permanent restoration, and operating the pipeline. *Cf.* Act § 324(b) (describing Project benefits, including "serv[ing] demonstrated natural gas demand," "increas[ing] the reliability of natural gas supplies," allowing gas producers to access additional markets, and "reduc[ing] carbon emissions and facilitat[ing] the energy transition"); *accord Sierra Club*, 68 F.4th at 652 (crediting FERC's determination that further delay in the completion of Project construction is environmentally inferior to timely completion).

Congress has now, however, taken bipartisan legislative action to ensure that the Project—whose economic and environmental benefits are "required in the national interest"—is constructed and placed into operation on a timely and expedited basis, "[n]otwithstanding any other provision of law." Act §§ 324(b), (c).

To that end, Congress has "ratifie[d] and approve[d]" the "extension[]" challenged in this case, along with all other federal-law authorizations necessary for the Project. *Id.* § 324(c)(1). In so doing, Congress modified substantive law by explicitly "supersed[ing] any other provision of law" that might be "inconsistent with the issuance of any authorization . . . or other approval for the Mountain Valley Pipeline." *Id.* § 324(f). Separate from its changes to substantive permitting law, Congress stripped the federal courts of jurisdiction to review "any action" taken by agencies, including the Commission, granting authorizations for the Project—including agency actions taken "prior to . . . the date of enactment of th[e] [Act]." *Id.* § 324(e)(1). Because the plain language of the Act divests this Court of jurisdiction over these petitions and separately moots Petitioners' claims, the Court must dismiss the petitions. Even if this Court had jurisdiction, the Act's amendments to substantive law and express ratification of the Commission's authorizations challenged here would justify summary denial of the petitions.

## I.     This Court Lacks Jurisdiction to Review the Challenged Orders.

### A.     Congress Stripped Federal Courts of Jurisdiction to Hear Challenges to the Second Extension Order.

By the express and unambiguous terms of the recent Act, this Court now lacks statutory jurisdiction to consider these petitions. Section 324(e)(1) provides that, "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any action taken by" relevant agencies, including "the Federal Energy

Regulatory Commission," to issue a covered authorization, permit, or approval for the Project, now or in the future.  The list of covered agency actions includes "any . . . approval necessary for the construction and initial operation at full capacity of [the Project]."  *Id.*  That list explicitly includes "extension[s]" like the one at issue here.  *Id*.  And § 324(e)(1) explicitly applies to such actions "whether issued prior to, on, or subsequent to the date of enactment" of the legislation, and includes "any lawsuit pending in a court as of the date of enactment of this section."  *Id.*  This language squarely encompasses the instant petitions.

Congress has the power to define the jurisdiction of lower federal courts. "[W]hen Congress strips federal courts of jurisdiction, it exercises a valid legislative power," and "Congress generally does not infringe the judicial power when it strips jurisdiction because . . . a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power."  *Patchak v. Zinke*, 138 S. Ct. 897, 906-07 (2018) (plurality op.) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998), and *Cary v. Curtis*, 44 U.S. (3 How.) 236, 245 (1845)), *aff'g Patchak v. Jewell*, 828 F.3d 995 (D.C. Cir. 2016); *accord generally Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092 (D.C. Cir. 2001) (affirming constitutionality of similar legislation).  And when "a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly."  *Nat'l*

8

*Coal. to Save Our Mall*, 269 F.3d at 1096 (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995)).

Absent jurisdiction, this Court must dismiss the case and proceed no further. "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361-62 (D.C. Cir. 2012) (same).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co.*, 523 U.S. at 94-95 (quoting *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Although 15 U.S.C. § 717r(b) generally provides this Court jurisdiction to review final orders of the Commission issued under the Natural Gas Act, Congress has revoked that jurisdiction with respect to challenges to authorizations for the Mountain Valley Pipeline, such as the extension order here.  Act § 324(e)(1).  In § 324(e)(1) of the Act, Congress provided that "no court shall have jurisdiction" over such actions, "[n]otwithstanding any other provision of law."  *Id.*  Petitioners may seek to argue that Congress exceeded its constitutional authority when it enacted § 324(e)(1)'s jurisdiction-stripping provisions, invoking this Court's "original and

exclusive jurisdiction" to entertain "any claim alleging the invalidity of th[e] [Act]." *See* Act § 324(e)(2). But any challenge to § 324(e)(1)'s constitutionality would be fruitless. Both this Court and the Supreme Court have repeatedly upheld similar jurisdiction-stripping legislation against constitutional challenge. *See Patchak v. Jewell*, 828 F.3d at 1000-07, *aff'd sub nom. Patchak v. Zinke*, 138 S. Ct. 897; *Nat'l Coal. to Save Our Mall*, 269 F.3d at 1093-97. Section 324(e)(1) is a valid exercise of Congress's legislative powers, and the instant petitions fall within its express scope. The petitions must accordingly be dismissed.

> B.    The Act Moots the Petitions.

Even if § 324(e)(1) had not stripped this Court of jurisdiction, the petitions face another, independent jurisdictional barrier: the Act's substantive changes to background law, express ratification of FERC's authorizations for the Project, and direction that FERC "continue to maintain" those authorizations going forward, render the petitions moot.

In § 324(c), Congress explicitly "ratifie[d] and approve[d]" all federal authorizations, permits, and other actions—explicitly including "extensions"— necessary for the construction and operation of the Project. Act § 324(c)(1). And it explicitly directed (in mandatory terms) each agency, including the Commission, "to continue to maintain" such authorizations going forward—again, explicitly including "extensions." *Id.* § 324(c)(2). That language clearly and unambiguously

encompasses the extension of time through October 13, 2026 at issue here.  Congress imposed those mandatory directives "[n]otwithstanding any other provision of law." *Id.* § 324(c).  Thus, even if this Court were to conclude that the Commission originally issued the Second Extension Order in a manner inconsistent with some other law, it could not grant Petitioners any effective relief, because Congress has now amended the underlying substantive law by ratifying and approving Mountain Valley's extension and directing the Commission to "continue to maintain" it going forward.  *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085 (D.C. Cir. 2017) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed as moot." (internal quotation marks omitted)).

This Court's decision in *Friends of the Earth v. Haaland* is directly on point.  No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023) (per curiam).  There, this Court dismissed as moot a case involving the legality of a decision of the Bureau of Ocean Energy Management to grant certain offshore oil and gas leases.  *Id.* at *1.  A district court had originally vacated the leases after finding a violation of the National Environmental Policy Act ("NEPA"), but while the litigation was pending on appeal, Congress enacted, and President Biden signed into law, the Inflation Reduction Act.  The Inflation Reduction Act directed the Secretary of the Interior to

11

"accept the highest valid bid for each tract or bidding unit" and then "promptly issue to the high bidder a fully executed lease." *Id.* (citation omitted). This Court held that, "[a]s a result of those instructions, th[e] case [was] moot." *Id.* It explained that "[e]ven if [this Court] agreed . . . that the [original] sale failed to comply with [NEPA], the result will be the same [under the Inflation Reduction Act]: The highest bidders will receive their leases." *Id.* It was accordingly "impossible" to grant "effective relief" to the groups challenging the leases. *Id.* (citation omitted); *accord Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) (per curiam) ("Where Congress enacts intervening legislation that definitively resolves the issues a litigant seeks to put before us, the claims are moot and we are precluded from deciding them."). As explained above, the same rationale applies with equal force here. Even if this Court were to conclude that there was some legal deficiency in FERC's original issuance of the challenged extension order, Congress has now ratified and approved the extension and directed FERC to continue to maintain the same, notwithstanding any other provision of law.

## II.    In the Alternative, This Court Should Summarily Deny the Petitions.

Even if this Court were to conclude that it has jurisdiction to consider Petitioners' challenges to the Second Extension Order and that the case is not moot, it should summarily deny the petitions for review. Congress has amended the underlying governing law by ratifying and approving all relevant permits and

authorizations necessary for construction and initial operation at full capacity of the Project, and it has further directed the Commission to maintain all necessary authorizations, including the extension challenged here, going forward.   Act § 324(c).  Lest there be any possible doubt about its expressed intentions, Congress explicitly stated that this Act "supersedes any other provision of law," including any statute or regulation Petitioners might argue the Commission violated.  *Id.* § 324(f); *cf. Nat'l Coal. to Save Our Mall*, 269 F.3d at 1095 (explaining that the "purpose of such a *non obstante* clause" is "to prevent courts from struggling to harmonize a statute with prior ones").  Simply put, there are no substantial merits issues left to decide.

"[T]he legislative power is the power to make law, and Congress can make laws that apply retroactively to pending lawsuits, even when it effectively ensures that one side wins."  *Patchak*, 138 S. Ct. at 905 (plurality op.) (citing *Bank Markazi v. Peterson*, 578 U.S. 212, 227-34 (2016)).  Indeed, even assuming arguendo that Petitioners had colorable claims prior to § 324's enactment, it has long been established that Congress may retroactively ratify government action that was unauthorized when taken.  *See United States v. Heinszen*, 206 U.S. 370, 382-83 (1907); *Patchak*, 138 S. Ct. at 911 (Breyer, J., concurring); *see also Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 & n.7 (D.C. Cir. 2006).

Section 324(b) codifies Congress's determination that the timely completion of construction and operation of the Project is "required in the national interest." Act § 324(b).  To that end, Congress expressly ratified and approved "all" permits, authorizations, extensions, and other approvals necessary for the Project and "direct[ed] . . . the Federal Energy Regulatory Commission . . . to continue to maintain such authorizations, permits, [and] . . . extensions," "[n]otwithstanding any other provision of law."  *Id.* § 324(c).  Through that ratification, Congress has amended the applicable law in a way that disposes of any conceivable merits arguments Petitioners might raise in challenging the lawfulness of the Second Extension Order.

That effectively transforms Petitioners' case from a challenge to the Commission's actions in issuing the Second Extension Order into a challenge to an act of Congress.  *See, e.g.*, *James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988) ("The ratification and confirmation of the government defendants' decision . . . transforms the plaintiffs' challenge to that decision into a challenge of the Settlement Act itself. . . .  Once Congress has thus ratified agency action by statute, even if that action had been arbitrary and capricious, judicial review requires a challenge to the statute itself."), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990) (per curiam).  But as discussed above, any such constitutional challenge would fail.  Although § 324(e)(2) makes clear that "the Act does not . . . bar" this Court's

14

"*consideration* of [the Act's] constitutionality," § 324 plainly *is* valid and constitutional under this Court's and the Supreme Court's case law. *Nat'l Coal. to Save Our Mall*, 269 F.3d at 1095 (emphasis added).

Accordingly, even if this Court had jurisdiction, the "merits of th[e] appeal" are "so clear as to justify expedited action." *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980) (per curiam). "There is nothing that could be brought before this court" by Petitioners "which could affect the need" to reject their challenges; "plenary briefing" and "oral argument" are thus unnecessary for this Court to resolve the case. *Sills v. Bureau of Prisons*, 761 F.2d 792, 793-94 (D.C. Cir. 1985); *accord Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam) (summary disposition appropriate where "no benefit will be gained from further briefing and argument of the issues presented"). Further delay in resolution of this litigation is particularly unwarranted, given Congress's express desire to "expedit[e] completion of the Mountain Valley Pipeline," and its finding that "the timely completion of construction and operation" of this Project is "required in the national interest." Act § 324.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the petitions for lack of jurisdiction or, in the alternative, summarily deny them.

Date:  June 21, 2023

Respectfully submitted,

*/s/ Jeremy C. Marwell*

Donald B. Verrilli, Jr.
Munger, Tolles & Olson LLP
601 Massachusetts Avenue, NW
Suite 500E
Washington, DC 20001-5369
Phone: 202.220.1101
Email: donald.verrilli@mto.com

Jeremy C. Marwell
Matthew X. Etchemendy
James T. Dawson
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
Email: jmarwell@velaw.com
Email: metchemendy@velaw.com
Email: jamesdawson@velaw.com

*Counsel for Mountain Valley Pipeline, LLC*

*/s/ Jennifer Brough*
(by permission)

*/s/ Randall S. Rich*
(by permission)

Jennifer Brough
Thomas E. Knight
Locke Lord LLP
701 8th Street, NW
Suite 500
Washington, DC 20001
Phone: 202.220.6965
Email: jbrough@lockelord.com
Email: tknight@lockelord.com

Randall S. Rich
Valerie L. Green
Pierce Atwood LLP
1875 K Street, NW
Suite 700
Washington, DC 20006
Phone: 202.530.6420
Email: rrich@pierceatwood.com
Email: vgreen@pierceatwood.com

*Counsel for Equitrans, L.P.*

*Counsel for Gas & Oil
Association of WV, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,448 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and 27(d)(2).

2.     This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.


June 21, 2023                          */s/ Jeremy C. Marwell*
                                       Jeremy C. Marwell
                                       Vinson & Elkins LLP
                                       2200 Pennsylvania Avenue, NW
                                       Suite 500 West
                                       Washington, DC 20037
                                       Phone: 202.639.6507
                                       Email: jmarwell@velaw.com

17

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that on June 21, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

June 21, 2023

*/s/ Jeremy C. Marwell*
Jeremy C. Marwell
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
Email: jmarwell@velaw.com

# EXHIBIT A

"(13) SPECIAL EXPERTISE.—The term 'special expertise' means statutory responsibility, agency mission, or related program experience.".

### SEC. 322. INTERREGIONAL TRANSFER CAPABILITY DETERMINATION STUDY.

(a) IN GENERAL.—The Electric Reliability Organization (as that term is defined in section 215(a)(2) of the Federal Power Act), in consultation with each regional entity (as that term is defined in section 215(a)(7) of such Act) and each transmitting utility (as that term is defined in section 3(23) of such Act) that has facilities interconnected with a transmitting utility in a neighboring transmission planning region, shall conduct a study of total transfer capability as defined in section 37.6(b)(1)(vi) of title 18, Code of Federal Regulations, between transmission planning regions that contains the following:

(1) Current total transfer capability, between each pair of neighboring transmission planning regions.

(2) A recommendation of prudent additions to total transfer capability between each pair of neighboring transmission planning regions that would demonstrably strengthen reliability within and among such neighboring transmission planning regions.

(3) Recommendations to meet and maintain total transfer capability together with such recommended prudent additions to total transfer capability between each pair of neighboring transmission planning regions.

(b) PUBLICATION.—Not later than 18 months after the date of enactment of this Act, the North American Electric Reliability Corporation shall deliver a study to Federal Energy Regulatory Commission, which shall publish the study required in subsection (a) in the Federal Register and seek public comments.

(c) REPORT.—Not later than 12 months after the end of the public comment period in subsection (b), the Federal Energy Regulatory Commission shall submit a report on its conclusions to Congress and include recommendations, if any, for statutory changes.

SEC. 323. PERMITTING STREAMLINING FOR ENERGY STORAGE.

<< 42 USCA § 4370m >>

Section 41001(6)(A) of the FAST Act (42 U.S.C. 4370m(6)(A)) is amended by inserting "energy storage," before "or any other sector".

**\*47**

### SEC. 324. EXPEDITING COMPLETION OF THE MOUNTAIN VALLEY PIPELINE.

(a) DEFINITION OF MOUNTAIN VALLEY PIPELINE.—In this section, the term "Mountain Valley Pipeline" means the Mountain Valley Pipeline project, as generally described and approved in Federal Energy Regulatory Commission Docket Nos. CP16–10, CP19–477, and CP21–57.

(b) CONGRESSIONAL FINDINGS AND DECLARATION.—The Congress hereby finds and declares that the timely completion of construction and operation of the Mountain Valley Pipeline is required in the national interest. The Mountain Valley Pipeline will serve demonstrated natural gas demand in the Northeast, Mid-Atlantic, and Southeast regions, will increase

the reliability of natural gas supplies and the availability of natural gas at reasonable prices, will allow natural gas producers to access additional markets for their product, and will reduce carbon emissions and facilitate the energy transition.

(c) APPROVAL AND RATIFICATION AND MAINTENANCE OF EXISTING AUTHORIZATIONS.—Notwithstanding any other provision of law—

(1) Congress hereby ratifies and approves all authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline; and

(2) Congress hereby directs the Secretary of the Army, the Federal Energy Regulatory Commission, the Secretary of Agriculture, and the Secretary of the Interior, and other agencies as applicable, as the case may be, to continue to maintain such authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline.

(d) EXPEDITED APPROVAL.—Notwithstanding any other provision of law, not later than 21 days after the date of enactment of this Act and for the purpose of facilitating the completion of the Mountain Valley Pipeline, the Secretary of the Army shall issue all permits or verifications necessary—

(1) to complete the construction of the Mountain Valley Pipeline across the waters of the United States; and

(2) to allow for the operation and maintenance of the Mountain Valley Pipeline.

(e) JUDICIAL REVIEW.—

(1) Notwithstanding any other provision of law, no court shall have jurisdiction to review any action taken by the Secretary of the Army, the Federal Energy Regulatory Commission, the Secretary of Agriculture, the Secretary of the Interior, or a State administrative agency acting pursuant to Federal law that grants an authorization, permit, verification, biological opinion, incidental take statement, or any other approval necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline, including the issuance of any authorization, permit, extension, verification, biological opinion, incidental take statement, or other approval described in subsection (c) or (d) of this section for the Mountain Valley Pipeline, **\*48** whether issued prior to, on, or subsequent to the date of enactment of this section, and including any lawsuit pending in a court as of the date of enactment of this section.

(2) The United States Court of Appeals for the District of Columbia Circuit shall have original and exclusive jurisdiction over any claim alleging the invalidity of this section or that an action is beyond the scope of authority conferred by this section.

(f) EFFECT.—This section supersedes any other provision of law (including any other section of this Act or other statute, any regulation, any judicial decision, or any agency guidance) that is inconsistent with the issuance of any authorization, permit, verification, biological opinion, incidental take statement, or other approval for the Mountain Valley Pipeline.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.    49